Nash, C. J.
 

 The bill states, that a marriage being about to take place between the plaintiff and one Unity Gilbert, it was mutually agreed that “ each party should place their property in such a condition as that they should have a joint estate in the property of each during their lives, remainder to the survivor for life, and after the death of both, if without issue from the intended marriage, then, and in that case, the property should go to the children of each by their former marriages ; her children having her property, and his children taking his property.” That Moses McKeithan was called upon to draw two deeds, and the intention of the parties fully explained to him. In drawing the deed from Unity Gilbert, the intention of the parties was observed, but in drawing that to be executed by the plaintiff, the draftsman committed a great error; for, by that deed, the whole of the negroes of the plaintiff were conveyed to Unity Gilbert during her life, and upon her death without issue of the marriage with the plaintiff, then to the children of the plaintiff by his former wife, who are the present defendants. The defendants deny that there was any mistake in drawing the deed executed by the plaintiff.
 

 The bill is to rectify this alleged mistake. The testimony of Mr. McKeithan conclusively establishes the mistake. He
 
 *317
 
 states that tbe intention of tlie parties was, that they should jointly own and enjoy the whole of the property, as well that of Unity Gilbert as of the plaintiff, during their joint lives, with remainder to the survivor during his or her life,' and upon the death of both, without leaving issue of the marriage, the property of each should return to his or her children by their respective previous marriages; that his instructions were to draw the deeds in conformity with that agreement.
 

 Both the deeds are before the Court as exhibits. In the one disposing of the property of Unity Gilbert the intention of the parties is fully expressed; but in that executed by the plaintiff, there is a most important variation. Under it, he has no interest in the slaves beyond the life of Unity, but upon her death, without issue of the marriage, the slaves of the plaintiff are to go immediately to his children. McICeithan tells us that the deed of Unity expresses truly the agreement, but that of the plaintiff does not. He accounts for the discrepancy between the two deeds with a
 
 nawete
 
 both amusing and creditable to him. Unity’s deed was drawn first, a work of some labor; and when ho had got through the first part of the plaintiff’s deed, the latter invited him to go and take a drink: the invitation was not to be neglected, but he is silent as to the number of drinks he did take. He returned to his work, and slyly insinuates that the latter part was written under the pressure of the plaintiff’s impatience to get married, and of his to get home. Unity’s deed was read over to her before executing it; the plaintiff’s was not; upon the assurance of the witness of its being like the other, and that plaintiff executed it in ignorance of the mistake, of which he, the witness, was, at the time, perfectly unconscious.
 

 The statement is so plain and simple as to carry conviction with it; but if any doubt could remain as to its truthfulness, it must all vanish upon considering the transaction. The object of the parties was that the property of each, after the death of both, should go to the children of their previous marriages, should there be no issue of that about to take place : thus securing to each a life-estate in all the slaves. The deed
 
 *318
 
 of the plaintiff, so far from carrying out the agreement, strips him of his property upon the death of Unity, and leaves him without any support, dependent upon the charity of his children. How far he could depend upon that tie, which hinds the child to the parent — perhaps the most universal tie known to our nature — -is evidenced by the bill filed by his children, to strip him of his property, and which is disposed of at the present term of the Court. Besides, how is it possible to suppose that the plaintiff should be willing that Unity, if she should survive him, should have all the slaves during her life, and if he survived her, she dying without issue of the marriage, all of his slaves should go immediately to his children, and leave him penniless
 
 %
 

 The mistake is fully proved, and the plaintiff, Timothy Clemmons, is entitled to have the deed executed by him, corrected, so as to conform to the agreement made between him and Unity Gilbert, before the marriage.
 

 Fee Ctjeiam. Decree accordingly.